UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WYANDOTTE NATION, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH L. SALAZAR, <br><br> Defendant. | Civil Action No. 11-1361 (BAH) <br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Before the Court is a motion filed by defendant Kenneth Salazar, the Secretary for the U.S. Department of Interior, to transfer venue of this case to the District of Kansas. ECF No. 6. Plaintiff Wyandotte Nation, a federally-recognized Indian Tribe based in Oklahoma, initiated the instant litigation against the defendant, alleging that he has failed in a timely manner to accept a tract of land located in Kansas into trust for the Wyandotte Nation's benefit "as specifically required by" the Land Claim Settlement Act, Public Law 98-602, 98 Stat. 3149 (1984). The defendant contends that this case should be transferred to the District of Kansas, where the property is located, because it involves a matter of significant local interest and the District of Columbia has no particular connection to this dispute. For the reasons stated below, the Court agrees. Accordingly, the defendant's motion to transfer this case to the District of Kansas is granted.

**I.    BACKGROUND**

On July 26, 2011, plaintiff Wyandotte Nation, a federally-recognized Indian Tribe headquartered in Wyandotte, Oklahoma, filed this action challenging the Department of

1

Interior's alleged failure to accept title to a tract of land known as the "Park City Land" into a trust created for the Nation's benefit as required by the Land Claim Settlement Act, Public Law 98-602, 98 Stat. 3149 (1984). Compl., ECF No. 1.

This Act provides a mechanism to satisfy certain judgments entered by the Indian Claims Commission in favor of the plaintiff and against the United States. Specifically, the Act provides "for the use and distribution of certain funds awarded the Wyandotte Tribe of Oklahoma," and, among other things, mandated that "[a] sum of $100,000 . . . shall be used for the purchase of real property which shall be held in trust by the Secretary [of the Interior] for the benefit of [the] Tribe" ("Land Purchase Funds"). Public Law 98-602, §§ 101(b); 105(b)(1).

The plaintiff alleges that, on November 25, 1992, it purchased a tract of land in Park City, Kansas ("Park City Land") with Land Purchase Funds. Compl. ¶ 16. The plaintiff then submitted, on January 21, 1993, an application requesting that the defendant take the Park City Land into trust pursuant to the Land Claim Settlement Act. *Id.* ¶ 17. This request was transmitted from a Department of Interior ("DOI") field office to the Washington, D.C. office for further review on February 19, 1993. *Id.* ¶ 18. No action, however, was taken by the defendant.

In 1995, the plaintiff states that it purchased a second tract of land with Land Purchase Funds in Kansas City, Kansas (the "Shriner Tract") and requested the defendant to accept that tract of land into trust. *Id.* ¶¶ 20-21. In 1996, the defendant accepted the Shriner Tract of land into trust, and approved gaming activities on that property under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq. Id.* ¶ 24; *see also Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1257 (10th Cir. *2001*). In response, the state of Kansas and other Indian tribes filed a lawsuit challenging the defendant's decision. Compl. ¶ 23; *see also Sac and Fox Nation of Missouri. v. Babbitt*, 92 F. Supp. 2d 1124 (D.Kan. 2000), *aff'd in part*, *rev'd in part and*

*remanded sub nom Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250 (10th Cir. 2001). After approximately five years of litigation, the Tenth Circuit ultimately concluded that the DOI acted arbitrarily in determining whether only Land Purchase Funds were used to purchase the Shriner Tract and also erred in approving gaming activities on the land. *Sac and Fox Nation of Missouri*, 240 F.3d at 1253. The Court then remanded to the DOI for reconsideration of the plaintiff's original request regarding the Shriner Tract. *Id.* at 1263-64.

Following remand, in 2002, the DOI determined that the Shiner Tract was purchased with Land Purchase Funds and affirmed its decision to accept the property into trust. *See Wyandotte Nation v. Sebelius*, 337 F. Supp. 2d 1253, 1261 (D. Kan. 2004), *vacated in part*, 443 F.3d 1247 (10th Cir. 2006). The plaintiff proceeded to operate gaming facilities on the site. *See id.* From 2002 to 2010, the plaintiff, the DOI, the state of Kansas, and other Indian tribes have engaged in extensive litigation surrounding the Shriner Tract and the plaintiff's ability to open a gaming facility on that land. *See* Mem. Supp. Def.'s Mot. Transfer Venue ("Def.'s Mem."), ECF No. 6, at 2-4. Indeed, the defendant's decision to accept the Shriner Tract into trust, and the plaintiff's decision to operate a gaming facility on the site spawned multiple lawsuits in the District of Kansas, two of which were originally filed in the District of Columbia and were transferred by this Court to Kansas because the controversy at the center of those cases "ha[d] a history that involve[d] litigation conducted within the District of Kansas and the Tenth Circuit." *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, No. 04-cv-513 (D.D.C. Apr. 2, 2004) (order transferring venue to the District of Kansas); *see also Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, No. 04-cv-1727 (D.D.C. May 2, 2005) (memorandum opinion granting motion to transfer venue); *see generally Iowa Tribe of Kansas & Nebraska v. Salazar*, 607 F.3d 1225 (10th Cir. 2010); *Governor of Kansas v. Kempthorne*, 516 F.3d 833 (10th Cir. 2008); *Wyandotte*

3

*Nation v. Sebelius*, 337 F. Supp. 2d 1253 (D. Kan. 2004), *vacated in part*, 443 F.3d 1247 (10th Cir. 2006); *Governor of Kansas v. Norton*, 430 F. Supp. 2d 1204 (D. Kan. 2006); *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, 437 F. Supp. 2d 1193 (D. Kan. 2000).

During the pendency of litigation involving the Shriner Tract, on April 13, 2006, the plaintiff resubmitted its application to have the Park City Land purchased in 1992 taken into trust pursuant to the Land Claim Settlement Act. Compl. ¶ 27; Def.'s Mem., ECF No. 6, at 4. Like the Shriner Tract, the plaintiff intends to operate a gaming facility on the Park City Land. *See* Def.'s Mot. Transfer, ECF No. 6, Ex. C, Wyandotte Resolution No. 06-04-13 (Apr. 13, 2006). The defendant, however, has not acted on the plaintiff's revived application. Compl. ¶¶ 31-32; Def.'s Mem., ECF No. 6, at 4. The plaintiff alleges that "despite the Nation's repeated requests and its undeniable need for prompt action, the Secretary has refused to act on the Park City Land trust acquisition, to provide any reasonable explanation for his delay, or even to specify a date by which he will act." Compl. ¶ 31. Consequently, the plaintiff filed this lawsuit on July 26, 2011, seeking a writ of mandamus pursuant to 28 U.S.C. § 1361 to compel the defendant to accept trust title to the Park City Land (Count I); a finding that the defendant violated the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (Count II); and a determination that the defendant breached his trust obligations to the plaintiff (Count III). Compl. ¶¶ 33-50.

On September 9, 2011, prior to filing an Answer, the defendant moved to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Kansas, where the Park City Land is located.[1] ECF No. 6. Shortly thereafter, on September 20,

---

[1] In its motion to transfer, the defendant requested an extension of time for it to respond to the Complaint until ten days after the Court's decision on the motion to transfer in order to "avoid uneconomically proceeding with case scheduling." Def.'s Mot. Transfer, ECF No. 6, at 1. Given the Court's conclusion that this case should be transferred, the Court will not address this request and leave further scheduling issues in this case to the discretion of the District of Kansas.

4

2011, the state of Kansas filed a motion to intervene in this case. ECF No. 7. Both of these motions are currently pending before the Court.

As explained below, the Court agrees with the defendant that transfer to the District of Kansas is warranted given that the District of Columbia has no significant connection to this case, and this matter involves an issue that will impact considerably the local Kansas community. Given this conclusion, the Court will not address the State of Kansas' motion to intervene, leaving determination of Kansas' request to the district court in the District of Kansas.

## II.  LEGAL STANDARD

Under the federal venue transfer statute, 28 U.S.C. § 1404, a district court may transfer a case to another district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Court may only transfer a case to another district "where it might have been brought." *Id.* This statute "vests discretion in the District Court to adjudicate motions for transfer on an 'individualized, case-by-case consideration of convenience and fairness.'" *Otter v. Salazar,* 718 F. Supp. 2d 62, 63-64 (D.D.C. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). Courts evaluate both public and private interest factors in determining whether to grant a transfer of venue. *Bederson v. United States,* 756 F. Supp. 2d 38, 46 (D.D.C. 2010). "The public interest factors . . . include: (1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law." *Id.* "The private interest factors that are considered include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to the sources of proof." *Id.* "Courts have imposed a heavy burden on those who seek transfer and a court will not order transfer

unless the balance is strongly in favor of the defendant." *Boland v. Fortis Const. Co., LLC,* No. 10-cv-1701, 2011 WL 2685612, at *8 (D.D.C. 2011) (internal citation and quotation omitted).

## III. DISCUSSION

The defendant argues that this case should be transferred to the District of Kansas because the decision to accept the Park City Land into trust pursuant to the Land Claim Settlement Act is a matter of a great interest to the local Kansas community, and the case has no significant connection to the District of Columbia. Consideration of the public and private interest factors at issue in the case demonstrates that transfer is warranted.

### A. The District of Kansas Has Jurisdiction Over This Case

As a threshold issue, transfer of venue pursuant to Section 1404(a) is only permissible if the receiving district is one where the case could have been brought in the first instance. *See Van Dusen v. Barrack*, 376 U.S. 612, 622-23 (1964). Here, the plaintiff's complaint raises questions of federal law. Specifically, the plaintiff seeks a writ of Mandamus against the defendant, a federal official, pursuant to 28 U.S.C. § 1361, and also asserts violations of the Administrative Procedure Act under 5 U.S.C. § 706. Compl. ¶¶ 33-44 (Counts I and II). Given that the plaintiff's claims arise under federal law, all federal district courts have proper subject matter jurisdiction. 28 U.S.C. § 1331.

Moreover, 28 U.S.C. § 1391(e) provides that venue is proper in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." With regards to the present case, as the defendant points out, "the subject of the Tribe's land-into-trust application and complaint is located entirely within the State of Kansas." Def.'s Mem., ECF No. 6, at 6-7; Compl. ¶ 16. Indeed, the plaintiff does not dispute that this action could have been brought in

the District Court of Kansas. Pl.'s Opp'n Def.'s Mot. Transfer Venue ("Pl.'s Opp'n"), ECF 10, at 4. Given that the District Court of Kansas would have subject matter jurisdiction over this dispute, and that venue would be proper in that court, this case may have been brought in, and accordingly may be transferred to, that district. *See* 28 U.S.C. § 1404(a). The Court will now turn to analysis of the relevant public and private interest factors.

### B. The Public Interest Factors Weigh in Favor of Defendant's Motion to Transfer

Courts typically consider three public interest factors when evaluating a motion to transfer venue: (1) the local interest in making local decisions regarding local controversies; (2) the potential transferee court's familiarity with the governing law; and (3) the relative congestion of the transferee and transferor courts. *Trout Unlimited v. Dep't of Agric.,* 944 F. Supp. 13, 16 (D.D.C. 1996). In this case, the first two factors strongly weigh in favor of transfer.[2]

#### 1. This Case Involves an Issue of Significant Local Interest

Central to the Court's determination that this case should be transferred to the District of Kansas is that this dispute is a matter of significant interest to the local Kansas community. As the Supreme Court has noted, "in cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), *superseded by statute on other grounds,* 28 U.S.C. § 1404(a), *as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2, (1994); *see also Citizen Advocates For Responsible Expansion, Inc. v. Dole*, 561 F. Supp.

---

[2] With regard to the relative congestion of the transferee and transferor court, the Court concludes that this factor is neutral in the present case. As the defendant notes, "[s]tatistics on federal case loads show that the time necessary to resolve a case in the District of Kansas (8.7 months) is nearly identical to that required in the District of Columbia (8.4 months). See 2010 Federal Judicial Caseload Statistics, Table C-5: Median Time Intervals From Filing to Disposition of Civil Cases Terminated available at http://www.uscourts.gov/Statistics/FederalJudicialCaseload Statistics/FederalJudicialCaseloadStatistics2010.aspx (last visited on Sept. 7, 2011)." Def.'s Mem., ECF No. 6, at 10.

1238, 1240 (D.D.C. 1983) ("[J]ustice requires that . . . localized controversies . . . be decided at home."). "This rationale applies to controversies involving federal decisions that impact the local environment, and to controversies requiring judicial review of an administrative decision." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003) (citing *Trout Unlimited,* 944 F. Supp. at 19-20). Despite plaintiff's assertion to the contrary, it is clear that the outcome of this litigation will have significant implications for the local community.

The plaintiff argues that the there is no local interest in deciding the controversy because "[t]his Court is being asked only to direct the Secretary to take land into trust as required by P.L. 98-602." Pl.'s Opp'n, ECF No. 10, at 6. The plaintiff contends that the local interest as it pertains to the Park City Land is only whether the plaintiff may open a gaming establishment on property taken into DOI trust, and this issue was resolved "during the twelve long years of litigation involving the Shriner's Tract [and] . . . has been finally and forever resolved in the Kansas litigations." *Id.* The Court is not persuaded.

Regardless of the implications of the Shriner Tract litigation on the present suit, the resolution of this controversy will directly impact Kansas and the community adjacent to the Park City Land property. As the defendant notes, "[a]cquisition of the property into trust would establish tribal sovereignty over the land, thereby implicating considerable economic, political, and legal interests." Def.'s Mem., ECF No. 6, at 7-8. Such affects would include "changes to criminal or civil jurisdiction, tax revenue losses, changes to zoning and land use, and other related concerns." Def.'s Reply Supp. Mot. Transfer, ECF No. 13, at 2. The court in *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21 (D.D.C. 2002), for example, confronted a similar issue regarding a tribe's acquisition of land and concluded, as does this Court, that the acquisition of property involved an issue of particular local importance that should be resolved in the home

8

district. *Id.* at 26 (concluding that because the possible acquisition of a tract of land by a tribe implicated "considerable local economic, political, and environmental interests," the local interest factor tilted in favor of transferring the case). Indeed, the local interest in this controversy is more significant given that the plaintiff intends to open a gaming facility on the site, and is additionally underscored by the fact that the State of Kansas has moved to intervene in this case.[3] *See* Kansas Mot. Intervene, ECF No. 7; *Santee Sioux Tribe of Neb. v. Nat'l Indian Gaming Comm'n*, No. 99-cv-528, slip op. at 8 (D.D.C. Apr. 19, 1999) (noting that courts have consistently "transfer[ed] cases involving Indian gaming controversies back to the state in which the controversy and the gaming were located."). Accordingly, the Court concludes that since the residents of the District of Kansas, and not Washington, D.C., will be affected by the conversion of the Park City Land into a trust, the interests of justice would be better served if the case were decided in Kansas. *See Wyandotte*, No. 04-cv-1727, slip op. at 12 (D.D.C. May 2, 2005).

### 2. The District of Kansas is Familiar with this Dispute

The second public interest factor also favors transfer of the present controversy to the District of Kansas. Although "all federal courts are presumed to be equally familiar with the law governing federal statutory claims," *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009) (internal citation omitted), the Tenth Circuit, and the District of Kansas, in particular, have specialized knowledge of both the parties, their history of litigation, and the statute at issue in the present litigation. *See F.T.C. v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31 (D.D.C. 2008) (The transferee "court's familiarity with these facts – and the law as applied to these facts – supports transfer . . . for judicial efficiency purposes.").

---

[3] As previously noted, the Court withholds judgment on the State of Kansas' Motion to Intervene as the Court is transferring the suit to the District of Kansas.

First, litigation involving the plaintiff and the defendant regarding the plaintiff's rights under the Land Claim Settlement Act has been ongoing in the District of Kansas since 1996, when Kansas and other tribes challenged the defendant's actions regarding the Shiner Trust. *See Sac & Fox Nation of Missouri. v. Babbitt,* 92 F. Supp. 2d 1124 (D. Kan. 2000), *rev'd* 240 F.3d 1250 (10th Cir. 2001) (case challenging DOI's decision to accept the Shriner Tract into trust); *Governor of Kansas v. Norton*, 430 F. Supp. 2d 1204 (D. Kan. 2006) (same); *Wyandotte Nation v. Sebelius*, 337 F. Supp. 2d 1253 (D. Kan. 2004), *vacated in part*, 443 F.3d 1247 (10th Cir. 2006) (case challenging Wyandotte Nation's right to open a gaming facility on the Shriner Tract); *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, 437 F. Supp. 2d 1193 (D. Kan. 2000) (same).

Moreover, the Tenth Circuit's ruling in *Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250 (10th Cir. 2001), which was decided on appeal from the District of Kansas, forms the basis of the plaintiff's argument that the defendant failed to comply with his statutory duty. The plaintiff states that the present litigation can be "summed up simply" that "the Tenth Circuit Court of Appeals found that the Secretary is mandated to take into trust lands that have been purchased with P.L. 98-602 funds," and cites *Sac & Fox Nation of Missouri* as the sole support for this position. Pl.'s Opp'n, ECF No. 10, at 2. The plaintiff's reliance on cases decided in the District of Kansas and in the Tenth Circuit confirms the expertise and familiarity of those courts in resolving issues in this case.

Finally, the plaintiff argues that "the Kansas courts have no experience with the issue in this case (use of P.L. 98-602 funds to purchase land) as evidenced by the remand of that issue to the Secretary every time it was raised." *See* Pl.'s Opp'n, ECF No. 10, at 4. Not only is this argument incorrect, but in fact the converse is true. While the District of Kansas has on prior

10

occasions remanded proceedings involving Pub. L. 98-602 funds to the DOI, this fact shows that that court has familiarity with the both the legal issues involved and the DOI's administrative decision-making process. The District of Kansas' experience in resolving tribal land allocation issues in these cases, involving both the plaintiff and the defendant as litigants, strongly demonstrates that, in the interests of judicial economy and efficiency, this case should be transferred to the District of Kansas. *See Shawnee Tribe*, 298 F. Supp. 2d at 27.

### C. Private Interest Factors Also Weigh in Favor of Defendant's Motion to Transfer

As noted above, the private interest factors that courts typically consider are: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to the sources of proof. *See Bederson*, 756 F. Supp. 2d at 46. In this case, these factors, like the public interest factors, also support transfer, particularly because this case does not have a significant nexus to the District of Columbia and neither party will be inconvenienced if this litigation were to take place in the District of Kansas.

#### 1. The Parties' Choice of Forum

"A plaintiff's choice of forum is afforded great deference, and is a paramount consideration in any determination of a motion to transfer." *Shawnee Tribe*, 298 F. Supp. 2d at 24 (citing *Sheraton Operating Corp. v. Just Corporate Travel,* 984 F. Supp. 22, 25 (D.D.C.1997)) (internal quotations and citations omitted); *see also Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010). However, the plaintiff's choice of forum is given less deference "when that choice is not plaintiff's home forum." *Pueblo,* 731 F. Supp. 2d at 42; *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) ("The choice of forum is ordinarily afforded great deference, except when the

plaintiff is a foreigner in that forum."). Deference to the plaintiff's choice of forum is further minimized "if the choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Id.* (quoting *Trout Unlimited,* 944 F. Supp. at 16) (internal quotations omitted); *see also United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 79 (D.D.C. 2011).

Here, the plaintiff's choice of forum is entitled to little deference because the plaintiff neither resides, nor has any substantial connections to this forum. The plaintiff, a federally-recognized Indian Tribe, maintains its seat of tribal government in the State of Oklahoma. Moreover, the property the subject of this dispute, Park City Land, is located entirely within the jurisdiction of the District of Kansas. The plaintiff contends, however, that its choice of forum is nonetheless entitled to deference because this court has "a [p]articular [i]nterest in [e]nsuring that [f]ederal [e]xecutive [o]fficials in the Nation's [c]apital [d]ischarge their [s]tatutory [d]uties." Pl.'s Opp'n, ECF No. 10, at 11. This argument is of little significance to the Court's consideration of the instant motion to transfer.

As courts in this district have routinely recognized, the involvement of a federal agency located in Washington, D.C. and its officials in a particular dispute does not necessarily militate against transfer to another district. *Shawnee Tribe,* 298 F. Supp. 2d at 25-26 ("[M]ere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative."); *see also Wyandotte Nation*, No. 04-cv-1727, slip op. at 8 ("Under § 1404(a), the court generally accords little weight to the location of federal agencies and counsel."); *DeLoach v. Philip Morris Co., Inc.,* 132 F. Supp. 2d 22, 25 (D.D.C. 2000) (stating that venue is not proper in the District of Columbia where "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here . . . is charged

with generally regulating and overseeing the [administrative] process"). In support of its contention that D.C. has a particular interest in this case, the plaintiff relies primarily on *The Wilderness Society v. Babbit*, 104 F. Supp. 2d 10 (D.D.C. 2000), but this reliance is misplaced. In *The Wilderness Society*, the plaintiff's choice of forum in Washington, D.C. was entitled to deference because the Secretary of the Interior was extensively personally involved in the decision-making process regarding the management of disputed Alaskan property, and the dispute had significant national implications. *Id.* at 14. Additionally, six of the eight plaintiffs in *The Wilderness Society* were national conservation organizations, four of which were headquartered in Washington, D.C. *Id.*

Unlike *The Wilderness Society*, in this case there is no evidence of the Secretary of Interior's personal involvement and the agency action in dispute appears to be a "run-of-the-mill" administrative decision that does not appear to have any national implications, but considerably affects the local interests in Kansas. *See Wyandotte*, No. 04-cv-1727, slip op. at 9 (concluding in another case brought by plaintiff Wyandotte Nation in the District of Columbia that the dispute did not implicate the same concerns that mitigated against transfer in *The Wilderness Society*); *Airport Working Grp. of Orange Cnty., Inc. v. Dep't of Defense*, 226 F. Supp. 2d 227, 230 n.1. (D.D.C. 2002) (concluding that *The Wilderness Society* was inapplicable because plaintiff could not show that the case had national implications or that officials in Washington, D.C. played a substantial role in the decision). Consequently, the Court concludes that the reasoning in *The Wilderness Society* does not apply to the present dispute, and that the District of Columbia does not have a particular nexus to this litigation involving property located in Kansas. The plaintiff's choice of forum therefore warrants minimal deference. *See Wyandotte Nation,* No. 04-cv-1727, slip op. at 8 (concluding that the plaintiff Wyandotte Nation's choice of

forum "merits little deference . . . because the plaintiff neither resides in, nor has a connection to the [District of the District of Columbia]" and the Wyandotte Nation's "seat of tribal government" is located in Oklahoma.).

### 2. Where the Claim Arose

Although the present lawsuit involves a challenge to the DOI's decision-making process, the plaintiff's claims did not arise out of the District of Columbia, but from the State of Kansas, where the Park City Land property is located. *See Wyandotte*, No. 04-cv-1727, slip op. at 8-9 (concluding that the dispute over a parcel of land arose in Kansas even though some agency decisions were made in Washington, D.C.); *Shawnee Tribe*, 298 F. Supp. 2d at 25 (transferring the case to the District of Kansas even though the Tribe communicated with agency officials located in Washington, D.C.). The plaintiff contends that its claims arose in this district because the application to take the Park City Land property into the Trust created for the plaintiff was transmitted to the Washington, D.C. office of the DOI. As the plaintiff admits in the Complaint, however, DOI review of the plaintiff's application of the Park City Land parcel commenced in a local DOI field office. Compl. ¶¶ 28-30. While the Court is cognizant of the plaintiff's assertions that the Tribe has traveled to Washington, D.C. on multiple occasions to discuss the status of the trust application, *id.* ¶ 31, that does not outweigh the fact that the plaintiff's claims arose in the District of Kansas, where the Park City Land property is located.

### 3. Convenience of Parties and Witnesses

In addition to consideration of the plaintiff's choice of forum, and the location where the plaintiff's claims arose, the Court additionally considers the convenience of the parties and potential witnesses. That said, **"**[c]ourts recognize that litigating in a particular forum is likely to inconvenience one party or another unless all the parties reside in the chosen district." *H & R*

*Block*, 789 F. Supp. 2d at 80. Thus, for the convenience factor to militate in favor of transferring to a different district, "litigating in the transferee district must not merely shift inconvenience to another party, but rather should lead to an overall increase in convenience for the parties." *Id.* (internal quotations and citations omitted).

The Court concludes that transfer to the District of Kansas would increase the convenience of the parties because it is the jurisdiction in which the Park City Land is located. As the defendant notes, the plaintiff had little difficulty litigating in the District of Kansas in prior suits involving the plaintiff and the defendant. Def.'s Mem., ECF No. 6, at 7. Moreover, the defendant, as the moving party and the only party residing in the District of Columbia, clearly does not anticipate any issues of convenience associated with transferring the litigation to Kansas. Although the Court notes that plaintiff's counsel is located in Washington, D.C, "[t]he location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Wyandotte*, No. 04-cv-1727, slip op. at 10 (citing *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000)).

As to the convenience of the potential witnesses in this case, that factor is of little weight since the plaintiff seeks review of an agency administrative decision. *See id.* at 10-11. Where the plaintiff seeks administrative review of an agency decision, the "convenience to the witnesses, is of little or no relevance since this is a review of an administrative decision that will be limited to the record." *Id.*; *Trout Unlimited*, 944 F. Supp. at 18 (holding that the convenience of the witnesses "has less relevance" where the case "involved judicial review of an administrative decision"). For these reasons, the Court concludes that the convenience of the parties and the witnesses weighs in favor of transfer.

#### 4. Ease of Access to Sources of Proof

The plaintiff contends that the "witness and documentation necessary to address these factors [regarding whether agency delay qualifies as unreasonable] are uniquely in Washington, D.C." Pl.'s Opp'n, ECF No. 10, at 12. The defendant downplays this issue, asserting that this factor has "little applicability here" and, in any event, the defendant "is fully prepared to litigate this matter in Kansas." Def.'s Mem., ECF No. 13, at 10 n.6. With respect to the location of documents, in this digital age of easy and instantaneous electronic transfer of data, the Court does not find that the "ease of access to sources of proof" factor carries any weight in the transfer analysis. This is particularly true in a case where both sides are sophisticated litigants and have the necessary resources to manage and exchange documents electronically. *See H & R Block*, 789 F. Supp. 2d at 83 (citing *Nat'l R.R. Passenger Corp. v. R. & R. Visual, Inc.*, No. 05–822, 2007 WL 2071652, at *6 (D.D.C. July 19, 2007) ("[T]echnological advances have significantly reduced the weight of the ease-of-access-to-proof factor.")). Moreover, as to the ease of access to witnesses, the Court agrees with the defendant that the administrative record in this Administrative Procedure Act case will be most critical rather than the testimony of live witnesses, and that record may be received as readily in the District of Kansas as in this Court. Finally, should the pending motion to intervene by the State of Kansas be granted, the District of Kansas will be a more convenient forum for the State.

## IV. CONCLUSION

Having considered the public and private interest factors implicated in the defendant's motion to transfer, the Court concludes that transfer is warranted. Given the significant local interests at stake, the District of Kansas' familiarity with litigation involving the plaintiff and the defendant, and the relatively minimal inconvenience to the parties, this case should be

transferred to the District of Kansas.  Accordingly, for the reasons explicated above, the Court grants the defendant's motion to transfer venue to the United States District Court for the Kansas.

**DATED: NOVEMBER 22, 2011**                /s/ *Beryl A. Howell*
                                                                    BERYL A. HOWELL
                                                                    United States District Judge